State  
vs. } Ind. No. 14671  
Stephen Widenski

December 14, 1928

WALSH, J. Heard on motion for new trial.

The jury returned a verdict in this case of guilty of possessing burglar's tools. The evidence on the part of the State showed that this defendant and another person, who appeared as a witness for defendant, at four o'clock in the morning stood on the doorstep of a variety store that the defendant is accused of attempting to enter; that they were chased by the officers and this defendant finally was captured at a gasoline station two or three blocks away. The other man got away. That while the defendant was standing with the officer at the patrol box, he threw a flashlight into the catch basin. Officer Doyle, who arrested defendant, picked up a pinch-bar and screw-driver in a driveway through which defendant had run. On investigation the next morning the officers found that there

were certain marks five inches above the lock on the door of this variety store. There may or may not have been other marks, but the marks that they testified to were five inches above the lock on that door.

The testimony of at least two witnesses was that this pinch-bar fitted into the abrasion or gouge or bruise five or six inches above the lock on that door, and that this screw-driver fitted exactly into the marks above the lock. The argument has been made that the pinch-bar was a stock pattern of which thousands could be procured around the country, but the unique thing about the screw-driver is that it was made to order, not a standard pattern, but made for a witness of the defendant, a carpenter, by a friend of his at the Union Wadding Company. That screw-driver was not a stock pattern, yet it fitted exactly in this place in this door.

The defendant's story was that while he was in that immediate neighborhood looking for a card game, he wasn't at this store. He admits that he was in the neighborhood and the police chased him and finally got him. He admits that he ran.

During the trial the Court disposed of the question as to whether or not instruments which are legitimate for honest use, but which are adapted for boring-in and breaking open, and are carried with the intent of boring-in and breaking open unlawfully, are within the definition of burglar's tools as stated in the statute.

The jury has said by its verdict that this defendant did have in his possession this screw-driver and this jimmy or pinch-bar and also a flash-light; that he had them in his possession at four o'clock in the morning; that he had them in a place where he didn't live, he living in another end of the city, and they are entitled to believe that he was up there and that he made those two marks five or six inches above the lock of that door for the purpose of

entering and that he was discovered by this officer and attempted to get away.

The defendant comes in and says in substance: "There were other marks on the door at this time, produced by similar implements, because there were attempts to enter the place and it was entered before, according to the testimony of one of the State's witnesses; that the State's witness (Hannan) didn't say anything about those other marks when he appeared on the witness stand; that counsel for the defendant knew nothing about it until it was brought to his attention after the case was closed and the jury had retired; that the fact that there were other marks on that door, made by instruments similar to these in question, is of such a nature that it might influence the jury in its verdict; that defendant did not and could not discover it before the end of the trial; that it is important that the jury should know this fact."

The testimony of this store-keeper has been read to the Court and proves to the Court conclusively that his statements were based upon the presence of the marks five inches above the lock and on no other marks. He says so specifically. He was not asked directly whether or not there were other marks on that door. All he did say about the condition of the door the night before was that it was all right. Whether he meant that it held securely and in order to open it you would have to pry it or use a key, or whether he meant its surface was smooth and free from gouges or marks, was a question for the jury. When he said the door was all right, he might have meant it was secure, that it needed a key to open it or it needed a pinch-bar to open it. The Court is not convinced that this evidence, if placed before the jury, would influence them materially. The presence of other marks of a similar nature on that door, to which these

tools were not fitted, would be immaterial; but the presence of these marks five inches above the lock, in which these tools were fitted, convinces the Court that the jury was justified in believing that these tools were used on that door that morning.

The Court hesitates to allow a verdict of guilty to stand if it feels that the defendant has not received all the protection that the law guarantees him. The Court feels in this case he was defended ably by his counsel, his rights were protected and the facts involved in the defence were brought out clearly and distinctly; the case was clearly and eloquently argued to the jury and the Court feels that when the jury returned that verdict it was justified.

Motion for new trial denied.

For State: Charles P. Sisson, Attorney General.

For defendant: Flynn & Mahoney.